All right, good morning. Each side in the Bowers matter will have 15 minutes. If appellants would like to reserve time for rebuttal, please be aware that you are responsible for keeping track of your own time. And you are Ms. Winston, is that correct?  Okay. Ms. Winston, you may begin when you're ready. Thank you. Good morning, your honors. Molly Winston on behalf of Jackson Daniel Bowers. I will reserve three minutes and watch the clock. There are four main issues presented in the briefing. The jury trial right, due process rights under Rule 32.1, the party presentation principle, and finally, the sufficiency of evidence. I'd like to turn first to Mr. Bowers' jury trial right. We asked the court to restore the jury trial right as it was originally intended. Recognizance forfeitures are a historical analog to supervised release revocation proceedings that required a jury trial. Would this be a ruling of first impression if we were to say that? Your honor, you're the first court to have the benefit of Jacob Schuman's research regarding recognizances. And so, yeah, and our argument is we understand that there is precedent regarding the Sixth Amendment. However, we are arguing under Article III because we acknowledge that there's precedent against us under the Sixth Amendment. Same question for Article III. The question is for Article III, yes. Yeah. It's parallel. If we were to say that, would be the first court to say that? You would be the first court to say what, your honor? It depends on what you say. That your client had an Article III right to adequate trial under the terms of the Constitution. Yes. Concerning the revocation of supervised release. Yes, your honor, you would be the first court to say that. Now tell us why we should. Indeed. It's in part because of Professor Schuman's research regarding recognizances and this historical analog. That it has many parallels to supervised release revocation proceedings. Primarily, both terms of conditional liberty are in the community. They're both imposed as part of a sentence in a criminal proceeding to be served after the entirety of the prison sentence. They provide supervision and reporting on defendants' behavior in the community. The violations for both recognizances and supervised release can result in imprisonment. And finally, they're intended for public protection. This court needs to look for not a historical twin, but just an analog that is relevantly similar under the Bruin and Rahimi line of cases. In the Hayman Court and prior Ninth Circuit panels in Henderson, Oliver, and Richards did not have the benefit of Professor Schuman's scholarly research. One of the keys to this... Do we, we can count here, there are three of us. Do we have the authority to overturn the prior rulings of other three judge panels? Well, your honor, I'm not asking you to overturn those rulings because I, but those, all three of those panels that I just referenced, Henderson, Oliver, and Richards, were analyzed under the Sixth Amendment and not Article Three. So today, I'm not asking you to overrule those. We are preserved... Do you have precedent that the Article Three is essentially equivalent or concurrent in scope to... Your honor, some, one of the primary cases that's been cited is Callan versus Wilson. And we disagree with the government's perspective on that case. And, and also Carpenter's decision, which says that they are identical in, in scope in referring to that. And that's not exactly what Callan versus Wilson says. It's not directly on point. It does not call them identical anywhere in that case. It does say that the Sixth Amendment does not override Article Three, which we actually agree with. The Sixth Amendment just gives specifics regarding criminal prosecutions and what due process should be entitled or protections are in place in criminal prosecutions. So we do believe that there is light between Article Three and the Sixth Amendment. And the primary reason is looking at the plain text. All crimes is what our Article Three covers. All should mean all. And crimes is also, you know, can be interpreted rather broadly as anything that really attaches a punishment. Anything where imprisonment is a potential penalty is a crime. And the Sixth Amendment, conversely, uses a different term, criminal prosecutions. Now, we acknowledge that there's precedent that says that supervisory release revocation proceedings are not criminal prosecutions and that the court is bound by that. There's another case that has been cited by the government. It's the Wood case regarding the same issue. Again, that case does not say that Article Three is identical to the Sixth Amendment. It does not go into detail regarding if all crimes is something applies to supervisory release revocation proceedings. That is not something that's it's not directly on point. We would be creating a circuit split, it seems to me, when you said earlier no courts ruled on it. It seems to me the Seventh Circuit ruled on it. Yes, I should say no binding. You have no binding precedent. Yes. They ruled on it and they said that if you don't have a right under the Sixth Amendment, you can't trigger a right under the Constitution. And you're basically saying, ignore the Seventh Circuit and launch out there on our own. Yes. I'm saying disagree with the Seventh Circuit based on the reasons that I'm giving you, including the fact that Kellen v. Wilson does not say that Article Three and the Sixth Amendment are identical. And that's the step that's the step further that Carpenter takes that we do not think that this court should take. I know earlier you stated that it was, you know, now we have the research done. Now we have the history done. The professor wrote the history on recognizance when Carpenter was decided that they have that to be able to look at. They did, Your Honor. They're the only other case that I'm familiar with that did have the benefit of Professor Schuman's research on recognizances. And so, yes, we acknowledge we are asking for a circuit split in this situation. One of the key things to understanding our argument is understanding the balance owed versus no balance owed systems in supervised release versus parole and probation. This is the key to our analysis. It's a structural difference that bears constitutional consequences. And that's what Judge Gorsuch said in the plurality opinion in Hayment. A conditional liberty in the form of a penalty in addition to a prison term is what happens in a no balance owed system. It's a separate penalty that augments, not replaces, the prison term. It's imposition of a new sentence for new conduct. At the time an individual is put on supervised release, as opposed to laying a case on file, probation, or parole, there is no balance owed on the sentence for their underlying offense. They already served every single day in custody for their underlying offense. Revocation, as it relates to supervised release, is really a violation of supervised release. A violation of supervised release is not a breach of the court's trust because there was no trust given to begin with. There is no balance owed. There's no grace given. A person on supervised release served every day of their prison sentence for the underlying offense. There's no limit on how many times Mr. Bowers could be reincarcerated for new supervised release violations. Supervised release can be reimposed up to the maximum penalty, in this case life, at any revocation hearing. Conversely, in balance owed systems, such as parole and probation, there is a balance on the original offense that still needs, that still can be served if that, for example, parole is revoked. Revocation is a more appropriate term when talking about revocation of parole and probation for this reason. Morrissey and Gagnon have already addressed probation and parole, and Morrissey says the essence of parole is that the release is before the sentence is complete. The Supreme Court is talking about this distinction of balance owed versus no balance systems. That's exactly what Morrissey is referencing. So, revocation for parole and probation is restoring the old sentence. Now, I think it's worth noting that the Sentencing Reform Act that came up in 1984, actually the original design was for there to be no revocations for supervised release. This was supposed to be a shift in how we do the system of parole and going from a more indeterminate system to a more determinate system. There was supposed to be criminal contempt charges instead of revocation proceedings. Then, in the Anti-Drug Abuse Act in 1985, there were a series of what they called technical amendments that essentially wiped out what was originally proposed. And so, we're asking the court to just restore how supervised release was originally intended. Now, wait a second. You want us to just ignore the statute? We're just asking that you, well, we want, it's not ignoring the statute, the supervised release statute, but we're asking for you to interpret it consistent with Article 3. Now, there has been some concern with, well, isn't this going to just upend the entire supervised release system? Are courts going to be able to handle all of the jury trials that might come about? And I have a couple of responses to that concern. First of all, the original jury trial right was only for non-petty offenses. And so, if a court were to want to impose less than six months, our position is that a jury trial would not be required. It would only be required for trials in which the judge intends to impose over a six-month sentence. The reality is also that in most supervised release revocation proceedings, that the violations are intended. And practically, a lot of times when there is a state law violation, such as here, the state court is actually the one that goes forward with the actual trial. And then the defendant comes back to federal court. And many times, there's a resolution consistent with whatever the state court resolution is. Here, there was a recommendation for joint dismissal. The court decided to not go with that recommendation. And that's why we have our arguments regarding the party presentation principle. I'm going to reserve the rest of time at this point for rebuttal. Okay. Thank you. Mr. Crane. Good morning, Your Honors. May it please the Court, Paul Crane on behalf of the United States. As Your Honors has alluded to already, we believe that the Article III argument is foreclosed for the same reasons that the Sixth Amendment argument that my friend on the other side acknowledges is foreclosed by this Court's precedents, namely Henderson and Oliver. As the Seventh Circuit found in Carpenter, as the Supreme Court has said in numerous cases, the scope of the federal constitutional jury trial right found in Article III is identical to the scope in the Sixth Amendment. They should be read in tandem and in complementary fashion. The Sixth Amendment did not create a second distinct track of federal constitutional jury trial rights. Rather, it was sort of building and reinforcing the Article III jury trial right. It would be additionally quite strange to think that if there were a second track, that the Sixth Amendment was narrower in scope than Article III. Most of the cases that have sort of discussed the relationship actually were addressing arguments where the Sixth Amendment, the claim was the Sixth Amendment was broader than Article III. But as the Seventh Circuit and Carpenter, when faced with the same sort of historical argument, the Supreme Court, and frankly every court that I'm aware of that has addressed the question, has accepted that Article III and the Sixth Amendment scope is the same. Now, if this were to disagree, as noted in our brief, we think that Article III wasn't properly preserved, and therefore, it would be subject to plain error review. And for very similar reasons, we don't believe that Bowers can satisfy any of the prongs of plain error review. If the judges have any questions on the jury trial argument or the historical research, I'm happy to answer them, but otherwise happy to submit on the briefs. Same as it relates to the other three questions that were presented. Okay. Thank you, Counsel. Thank you, Your Honors. All right. Ms. Winston. Thank you, Your Honor. The government did not address why there was different language used between the Sixth Amendment and Article III. And Article III was properly preserved as articulated in our briefing when Mr. Powers-Beggs, the trial counsel, asked for a jury trial. Our position is that that was sufficient to preserve that argument, and I'll rest on the briefing on that issue. If there's no further questions regarding the jury trial, I'll move on to a couple of the other issues. Counsel, can you just remind me, I don't have it at the top of my mind, but did counsel for Mr. Bowers say that they were asking for a jury trial under the Sixth Amendment? They did specifically reference the Sixth Amendment. However, our position is that that doesn't limit the, that preserves the claim of asking for a jury trial, and that it's a different, it's an argument that cannot be waived to ask for a jury trial under Article III. So our position is that the government's claim that that is not preserved is confusing claims and amendments. Our claim was preserved by asking for a jury trial, and it's an argument to say that it's under Article III versus the Sixth Amendment. Thank you. So I will briefly go through the violations under Rule 32.1, which were due process violations, namely, no disclosure of the phone call from Mr. Bowers to Ms. Mendoza that was alleged in one of the petitions, and also that he did not get to cross-examine Ms. Mendoza regarding the information in the police report, which was then, again, reiterated in the violation reports. So Rule 32 requires, 32.1 requires opportunity to appear, present evidence, and question any adverse witness unless the court determines that interest of justice does not require the witness to appear. In this case, the district court did not make those requisite findings. The government actually concedes that the district court did not make those findings, and so our position is that he should have had that opportunity, and that was a violation of 32.1b2b, and also the Comito balancing test. It's also not Mr. Bowers' burden to prove the violations, or to bring the adverse witness into court. This hearing happened in a bit of a haphazard way and unpredictable because he walked in expecting that the court would agree to joint dismissal, but did not. Didn't Mr. Bowers concede, though, that he did make the call? It was an accident, he claims, but he did say he made the call, correct? Mr. Bowers, I do not believe, made any. I think in argument, his counsel stated that his defense would be that it was an accident, and so at least implicitly conceding that he made the call. However, the defense to that in state court, which there was no elements provided by the, you know, referenced by the district court, no jury instructions, so the, I, he would have a defense because if it was accidental, and there, and there was, there was knowledge of a potential call to his mother referencing the fact that it was accidental that was not disclosed. Okay, and I, you're out of time, I'm at my time, so the court has no further questions. Thank you. Thank you. All right, thank you, counsel. This matter is now submitted, and this concludes our oral arguments for this morning. Thank you again to all counsel and the court staff. We will now stand in recess. Thank you.
judges: HAWKINS, McKEOWN, ALBA